# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLINOIS TOOL WORKS INC., <br><br> Plaintiff, <br> vs. <br> MOC PRODUCTS COMPANY, INC., <br><br> Defendant. | CASE NO. 09CV1887 JLS (MDD) <br><br> **ORDER ON CLAIM CONSTRUCTION** |

Plaintiff Illinois Tool Works Inc. brings suit against Defendant Moc Products Company, Inc. for infringement of Patent No. 5,806,629, Patent No. 6,073,638, and Patent No. 6,112,855. The patents are in the field of cleaning automotive parts, including but not limited to engines and transmissions. Presently before the Court is claim construction. After considering the briefing and oral argument, the Court construes the disputed claim terms as follows.

## LEGAL STANDARD

The Court construes the scope and meaning of disputed patent claims as a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–90 (1996). Words of a claim are "generally given their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). This is the meaning the term would have to a person of ordinary skill in the art as of the effective filing date of the patent application. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Because the inquiry into the meaning of claim terms is an objective one, the court looks to publicly available sources to show what a person would have

1  understood the claim language to mean. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). Those sources include the claims, the specification, the prosecution history, and relevant extrinsic evidence. *Id.*

Claim construction begins with an analysis of the words of the claims themselves. *See Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 365 F.3d 1299, 1303 (Fed. Cir. 2004). In examining the claims, "the context in which a term is used can be highly instructive." *Phillips*, 415 F.3d at 1314. Moreover, "[o]ther claims of the patent in question, both asserted and unasserted can . . . be valuable sources of enlightenment as to the meaning of a claim term." *Id.* "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Conversely, under the doctrine of claim differentiation, "different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007).

"Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582; accord Phillips, 415 F.3d at 1317. The specification acts as a dictionary when it expressly or implicitly defines terms used in the claims. *Vitronics*, 90 F.3d at 1582. In doing so, the patentee may define a claim term in a manner inconsistent with its ordinary meaning. *Metabolite Labs., Inc. v. Lab. Corp. of Am.*, 370 F.3d 1354, 1360 (Fed. Cir. 2004).

Patent claims should ordinarily be construed to encompass the preferred embodiments described in the specification, for "[a] claim construction that excludes a preferred embodiment . . . 'is rarely, if ever correct.'" *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005). However, a court should not import limitations from the specification into the claims, *Phillips*, 415 F.3d at 1323, absent a specific reference in the claims themselves, *Reinshaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).

///

The prosecution history may also inform claim construction. *Vitronics*, 90 F.3d at 1582. "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. It can be useful to show "how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

"In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583. But this is not a rule of admissibility, nor does it "prohibit courts from examining extrinsic evidence, even where the patent document is itself clear." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999). The court is not "barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Phillips*, 415 F.3d at 1324.

**DISCUSSION**

**1.    Patent No. 5,806,629**

Patent No. 5,806,629 is an "apparatus and method for service of an automotive automatic transmission." The invention exchanges old and new fluid in an automatic transmission fluid system without letting the system operate with insufficient fluid levels, otherwise known as "running dry." The invention achieves this goal by ensuring that equal amounts of old and new transmission fluid are exchanged.

At the Markman hearing, the parties agreed with two of the Court's constructions. The term "drivingly coupled to one another for operation simultaneously in unison" is construed as "connected such that one drives the other so that the two operate simultaneously in unison." And the term "rotary pump" is construed as "the portion of the motor/pump unit that utilizes rotational energy to move fluid." The two remaining terms are discussed below.

**A.    *"motor/pump unit"***

The proper construction of the term "motor/pump unit" is "a part having a motor and a pump." Both parties propose constructions that contain this language, but both parties also append

1 additional limitations for which the Court can find no basis.

2 Plaintiff proposes that "motor/pump unit" be construed as "a motor and a pump, making up a part, drivingly coupled to one another for operation simultaneously in unison to displace a substantially equal volume of fluid." (Doc. No. 46 (P's Open. Brief) at 7.) This construction impermissibly duplicates claim language and improperly imports limitations from the preferred embodiment.

7 The language "to displace a substantially equal volume of fluid" duplicates language already found in claims 1, 14, and 15. Those claims all indicate that the "used ATF pumped out [of the transmission] . . . is continuously replaced in substantially equal volume with new ATF from said volume by said motor/pump unit." Patent '629 at 11:61–65. The duplication improperly denies meaning to those parts of the claim. *Bicon Inc. v. Straumann Co.*, 441 F.3d 945, 9540 (Fed. Cir. 2006). And this portion of Plaintiff's construction is properly rejected.

13 Second, "[d]rivingly coupled to one another for operation simultaneously in unison" improperly imports limitations from the specification. *See Phillips*, 415 F.3d at 1323. Plaintiff directs the Court to a portion of the specification discussing the motor/pump unit. The specification states that "the shafts drivingly connect the indicated spur gears for rotation in unison." Patent '629 at 8:23–36. But the problem is that this portion of the specification is under the heading "Detailed Description of an Exemplary Preferred Embodiment of the Invention." Patent '629 at 5:34–36. And other than this preferred embodiment, nothing requires the motor and pump be "drivingly coupled to one another for operation simultaneously in unison." Thus, this portion of Plaintiff's construction is properly rejected as well.

22 Defendant's construction—"a part having a motor and a pump, each containing gears, where the gears of the motor portion are forced to rotate by old ATF flowing through the motor portion, thereby rotating the pump portion which is coupled to the motor portion by two shafts"— is similarly flawed. (Doc. No. 53 (D's Resp. Brief) at 1.) It is just a description of Figure 3.

26 Plaintiff makes the broader argument that its construction is necessary to meet the goal of the invention: preventing the transmission from running dry. The Court disagrees. The motor and pump portions of the motor/pump unit need not be "drivingly coupled to one another for operation

1  simultaneously in unison to displace a substantially equal volume of fluid" in order to meet the
2  invention's goal.  The claims themselves require that old ATF be "continuously replaced in
3  substantially equal volume with new ATF . . . ."  Patent '629, claims 1, 14, 15.  Even without
4  limiting the claim term as Plaintiff proposes, the claim language achieves the invention's goals.
5  Based on the evidence, the term "motor/pump unit" is properly construed as "a part having
6  a motor and a pump."  Both parties' proposed constructions are rejected.  One impermissibly
7  duplicates claim language, and both improperly import limitations from a preferred embodiment.

**B.**     ***"rotary motor" and "rotary motor portion of the motor/pump unit"***

9  The Court construes "rotary motor" as "a portion of the motor/pump unit that converts
10 fluid flow into rotational energy and drives the pump unit."
11 Claims 1 and 15 state that "old ATF from the transmission flows via a rotary motor portion
12 of the motor/pump unit to waste by reason of pressure provided by said internal transmission pump
13 and drives a pump portion of said motor/pump unit."  Patent '629 at 11:53–57, 18:9–13.  This
14 claim language presents two ideas.  First, old ATF flows through the rotary motor and into waste.
15 It does so by reason of pressure provided by the internal transmission pump.  Second, old ATF
16 drives a pump portion of the motor/pump unit.
17 The prosecution history provides further guidance.  Claim 1 originally read "motor portion
18 of the motor/pump unit" instead of "rotary motor portion of the motor/pump unit."  (Doc. 50 at 25,
19 Doc 50-1 at 28.)  "Rotary" was added after the claim was rejected as anticipated.  A "rotary
20 motor" differentiated itself from prior art because prior art utilized a "piston/cylinder device of
21 limited displacement" as opposed to "a positive displacement motor pump unit of rotary design."
22 (Doc 50-1 at 13.)  More importantly, the patentee also stated that "the rotary motor portion is thus
23 stated to drive a pump portion of said motor/pump unit."  *Id.*  The prosecution history presents two
24 ideas: 1) the rotary aspect is significant and 2) the rotary motor portion drives the pump portion.
25 In light of the intrinsic evidence, the Court concludes that "rotary motor" is properly
26 construed as "a portion of the motor/pump unit that converts fluid flow into rotational energy and
27 drives the pump unit."  This construction fits with the claim language and captures the prosecution
28 history.

**2. Patent No. 6,073,638**

Patent No. 6,073,638 is a "method and apparatus for cleaning an automotive engine." The invention solves two problems that arise when cleaning engines with liquid non-aerosol cleaners: 1) nonuniform distribution of cleaner within the engine intake and 2) puddling of the cleaner. The patent solves these problems by atomizing the liquid cleaner.

*A.    "aspirator"*

Plaintiff proposes construing "aspirator" as "a fitting for ingesting air and moving liquid." (P's Open. Brief at 14.) Defendant proposes "a device for removing liquid by suction." (Doc. No. 45 (D's Open. Brief) at 6.) The Court rejects both proposals and construes "aspirator" as "a fitting through which liquid, and sometimes air, passes."

The Court notes at the outset that Defendant's proposal is out of left field. The dictionary-based construction bears little connection to the claims and the patent. Plaintiff's proposed construction is more plausible, however, and it also highlights the main issue concerning this term: whether "aspirator" must always allow the passage of air.

The analysis begins with the independent claims. Claim 1 indicates that an "aspirator" communicates liquid cleaner into the intake system to both atomize the liquid cleaner and introduce the liquid cleaner into the intake system. Patent '638 at 7:18–20. The "aspirator" in claim 5 communicates liquid cleaner and ambient air into the intake system to atomize the liquid cleaner and introduce the cleaner into the intake system. Patent '638 at 8:14–15.

Based on these claims, "aspirator" serves two functions. The first is to communicate liquid cleaner into the intake in order to atomize the liquid cleaner. Atomization is accomplished whether the liquid cleaner is being communicated alone, as in claim 1, or with ambient air, as in claim 5. The second function is to introduce the cleaner into the intake system.

Knowing an "aspirator's" function provides the first contours of a proper construction. An "aspirator" must be capable of passing both liquid and air in order to meet the limitations in claim 5. But there is no requirement that "aspirator" always do both. Claim 1 requires that the "aspirator" communicate liquid cleaner only. This supports the idea that "aspirator" only sometimes passes ambient air. If "aspirator" always allowed the passage of air, claims 1 and 5

1  could not be differentiated.

2  Plaintiff argues that an "aspirator" must always allow the passage of liquid and air. In
3  support, Plaintiff points to the specification. It states that the claimed apparatus comprises, in part,
4  an aspirator, "said aspirator including an ambient air intake port aspirating ambient air and mixing
5  said ambient air with said liquid cleaner to atomize the latter." Patent '638 at 3:8–10. The Court
6  finds the quotation unpersuasive. Ultimately, the claim construction inquiry begins and ends with
7  the words of the claim. *See Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 365 F.3d 1299, 1303
8  (Fed. Cir. 2004). And to accept the specification would be to ignore the claim language discussed
9  above.

10  Plaintiff also argues that the "aspirator" must allow passage of air in order to atomize the
11  liquid cleaner. At oral argument, Plaintiff showed a video in which an aspirator fitting had its air
12  intake port blocked; the result was severely flawed atomization. But this is bad science. A fitting
13  designed to atomize liquid by using air will probably fail if the air is removed. More relevantly,
14  Plaintiff fails to provide any basis for asserting that no fitting can sufficiently atomize a liquid
15  without also communicating air. Claim 1 requires as much.

16  The Court finds that the proper construction of "aspirator" is a "a fitting through which
17  liquid, and sometimes air, passes." Although the construction does not mesh with the common
18  meaning of the term, the Court finds that a person having ordinary skill in the art, reading the term
19  in context of the entire patent, would understand the term to have such a construction.

20  **B.    "with an ambient air intake bore"**

21  Plaintiff proposes construing "with an ambient air intake bore" as "having a hole for
22  ambient air intake." Defendant proposes "having a hole or passage for ambient air intake." The
23  question is whether the word "passage" is appropriate. The Court finds that there is no basis for
24  including "passage." The proper construction should be "having a hole for ambient air intake."

25  **C.    "fast idle speed"**

26  The Court construes "fast idle speed" as "an idle speed that is slightly above normal idle
27  speed for a given engine."

28  ///

1    The claims do not provide guidance as to the meaning of "fast-idle speed." Thankfully, the
2 specification does. When describing the background of the invention, the specification discusses
3 air flow in the intake system of an engine that is being cleaned. It states in part:

> Further, the air flow in the intake system of an engine while idling or at a speed slightly above idle (which is ordinarily the case while the cleaner is being introduced) is generally not sufficient to . . . .

Patent '638 at 2:16–20. This indicates the existence of at least two categories of engine idle speeds: 1) the regular idling speed and 2) a speed "slightly above idle"—which is usually the speed the engine runs at when it is being cleaned.

Later, when describing the preferred embodiment, the specification describes the idle speed of an engine being cleaned. It states:

> The additional ambient air admitted to the intake manifold via fitting assists in insuring that the operational speed of the engine during the cleaning operation is about 1500 RPM (i.e., slightly above normal idle speed for most automotive engines).

Patent '638 at 6:20–23. The specification describes 1500 RPM, the speed of an engine being cleaned by a preferred embodiment, as "slightly above normal idle speed for most automotive engines."

Defendant argues for construing "fast-idle" as 1500–2000 RPM. Defendant claims that the patentee defined "fast-idle" by using "i.e." in the statement "the operational speed of the engine during cleaning operation is about 1500 RPM (i.e., slightly above normal idle speed for most automotive engines)." This is backwards. The use of "i.e." defines "1500 RPM," not "fast-idle speed."

The proper construction of "fast-idle speed" is "an idle speed that is slightly above normal idle speed for a given engine." The specification provides ample support that engines are usually cleaned while they are operating at an idle speed that is slightly above normal. Claims for an engine cleaning invention should be right in light of that evidence.

**3.    Patent No. 6,112,855**

Patent 6,112,855 is an "apparatus and method for cleaning an automotive automatic transmission." There are two issues relating to this patent. First, Defendant argues that independent claims 1 and 14 of the '855 patent should be construed as requiring only "hoses,

conduits and or adaptors" and not the flush machine itself. (D's Open. Brief at 7.) Second, Defendant argues that claim 5 should be construed pursuant to 35 U.S.C. § 112(6) as a means-plus-function claim. The Court considers each issue in turn.

### A.   *Claims 1 and 14 Requiring Only Hoses, Conduits, and/or Adaptors*

The two claims at issue here are independent claims 1 and 14 and their associated dependent claims. Claim 1 states in part:

> 1. A machine for service of an automatic machine . . . said machine comprising: . . . .

Patent '855 at 16:13, 29. Claim 14 states in part:

> 14. In combination, a machine for service of an automatic transmission . . . said machine comprising: . . . .

Patent '855 at 19:10, 23–24

The term "machine" is mentioned in the preamble for each claim but not in the body. And because "a claim's preamble is not [ordinarily] construed as a claim limitation," Defendant argues that claims 1 and 14 should cover only the hoses, conduits, and/or adaptors mentioned in the claim body, not machines. (D's Resp. Brief at 8.)

The disagreement here centers around whether the preamble to the claims, containing the term "machine," should be considered a claim limitation. The preamble can be a claim limitation if it recites essential structure or steps, or if it is necessary to give life, meaning, and validity to a claim. *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1340 (Fed. Cir. 2010.) This can occur when "limitations in the body of the claim rely upon and derive antecedent basis from the preamble." *Eaton Corp. V. Rockwell Intern. Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003).

An analysis of claims 1 and 14 indicate that the preambles give meaning to the claims. The term "machine," found within the preamble, is therefore properly considered a claim limitation.

The Court begins with claim 1. The analysis here provides an example of why the preamble is necessary to give meaning to the claim; therefore, it follows that "machine"—as part of the preamble—is considered a claim limitation.

The body of claim 1 begins by claiming a "conduit" that connects to a part of the vehicle and transfers transmission fluid. It states, in part:

> a first *fluid flow conduit adapted for connection to one of the complementary parts of the vehicle coupling* and conducting used transmission fluid from the transmission to a waste container while the complementary parts of the vehicle coupling are uncoupled from one another . . . .

Patent '855 at 16:30–31 (emphasis added). Looking at the claim without the preamble leaves a person of ordinary skill in the art wondering what "one of the complementary parts of the vehicle coupling" refers to. The person recognizes that a "conduit" is supposed to connect to "the complementary part" and conduct transmission fluid, but that is the extent of the understanding.

The preamble to claim 1 defines the term "one of the complementary parts of the vehicle coupling." The preamble states in part:

> A machine for service of an automatic transmission while the transmission is in an automotive vehicle, and which *vehicle has an external circulation loop for circulation of transmission fluid external to the transmission, the external circulation loop having a vehicle coupling therein with two complementary parts* coupled in fluid flow connection with one another to complete the external circulation loop.

Patent '855 at 16:13–19 (emphasis added). This language provides meaning. The "complementary part of the vehicle coupling"—the part the "conduit" connects to—is part of the external circulation loop used for circulation of transmission fluid external to the transmission.

Only after considering the preamble does the body of the claim make sense. The preamble of claim 1 is therefore necessary to give meaning to the claims, and the term "machine" found in the preamble is properly considered a claim limitation for claim 1.

Claim 14 is resolved via the same analysis. The preamble and the claim limitations each also reference "conduits" and "complementary parts of the vehicle coupling." The preamble for Claim 14 also gives meaning to the claims and should be considered a claim limitation. And because the term "machine" is found in the preamble, Claim 14 also covers a machine, not just "hoses, conduits, and/or adaptors."

The preambles in claims 1 and 14 provide meaning to the limitations found in the body of the claim. As a result, the preambles are properly construed as claim limitations. The byproduct is that "machine," found in the preamble, is also a claim limitation. Claims 1 and 14 and their associated dependant claims are therefore not limited to only hoses, conduits, and/or adaptors.

///

**B.     *Claim 5 as a Means-Plus-Function Claim***

A means-plus-function claim claims something for the way it functions without reciting the structure for performing that function. Means-plus-function claims are governed by 35 U.S.C. § 112, ¶ 6. The statute provides that:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6.

Defendant argues that the term "machine" found in Claim 5 should be construed as a means-plus-function term. Moreover, as a means-plus-function term, Defendant argues that "machine" should be interpreted as covering only the "structure found in the specification at column 7, line 7 to column 8, line 17." (D's Open. Brief at 8.)

Claim 5 states:

> A *transmission cleaning machine* for servicing an automotive automatic transmission while the transmission is in an automotive vehicle . . . *said transmission cleaning machine* comprising:
> . . .
> *said machine* further including a set of adapters adapted to be connected . . .
> . . . .

Patent '855 at 17:26–64 (emphasis added)

The first step is to determine whether "machine" should be construed as a means-plus-function term. "A claim term that does not use 'means' will trigger the rebuttable presumption that § 112, ¶ 6 does not apply." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed Cir. 2003). Claim 5 does not employ the word "means," and the rebuttable presumption that § 112, ¶ 6 does not apply is triggered. Defendant must overcome this presumption in order to subject "machine" to construction under § 112, ¶ 6.

To overcome this presumption, Defendant must show that "the claim term fails to recite sufficiently definite structure or else recites a function without reciting sufficient structure for performing that function." *Apex Inc.*, 325 F.3d at 1372. To help determine whether a claim term recites sufficient structure, the Court examines whether the term has an understood meaning in the art. *Id.*

1       Defendant fails to rebut the presumption that § 112, ¶ 6 does not apply, and "machine"
2  should not be construed as a means-plus-function claim.  The Court notes that the analysis is more
3  properly performed on the term "transmission cleaning machine," not "machine."  The claim body
4  recites "said machine" in reference to the "transmission cleaning machine" found in the preamble.
5  This is an important distinction because while the term "machine" might be generic, the term
6  "transmission cleaning machine" is not.

7       The term "transmission cleaning machine" has an understood meaning in the art.  The '855
8  specification makes several references to prior art transmission cleaning machines and also depicts
9  a preferred embodiment.  *See* Patent '855 at 1:35–2:61.  A person of ordinary skill in the art would
10 understand what "transmission cleaning machine" meant and the structure such a machine would
11 need to have in order to perform the claimed functions.  Claim 5 builds on the transmission
12 cleaning machines of yore, and the body of the claim provides further structure for a "transmission
13 cleaning machine."

14      The Court rejects Defendant's argument that "machine" should be construed as a means-
15 plus-function claim under 35 U.S.C. § 112, ¶ 6.  The body of the claim does not use "means," and
16 Defendant fails to rebut the presumption that the claim is not a means-plus-function claim.

17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

# CONCLUSION

The terms in dispute are construed as follows:

**Patent 5,806,629**

| Issue | Construction |
|---|---|
| "motor/pump unit" | a part having a motor and a pump |
| "rotary motor" and "rotary motor portion of the motor/pump unit" | a portion of the motor/pump unit that converts fluid flow into rotational energy and drives the pump unit |
| "drivingly coupled to one another for operation simultaneously in unison" | connected such that one drives the other so that the two operate simultaneously in unison |
| "rotary pump" and "rotary pump portion of said motor/pump unit" | the portion of the motor/pump unit that utilizes rotational energy to move fluid |

**Patent No. 6,073,638**

| Issue | Court |
|---|---|
| "aspirator" | a fitting through which liquid, and sometimes air, passes |
| "with an ambient air intake bore" | having a hole for ambient air intake |
| "fast-idle speed" | an idle speed that is slightly above normal idle speed for a given engine |

**Patent No. 6,112,855**

| Issue | Court |
|---|---|
| Claims 1 and 14 Requiring Only Hoses, Conduits, and/or Adaptors | No, the preambles are limiting |
| Claim 5 as a Means-Plus-Function Claim | No |

**IT IS SO ORDERED.**

**DATED: May 12, 2011**

*Janis L. Sammartino*
**Honorable Janis L. Sammartino**
**United States District Judge**